UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN MERCER and MICHELLE
MERCER,

             Plaintiffs,

v.

             Case Number 08-11443-BC
             Honorable Thomas L. Ludington

DIANE CSIKY,

             Defendant.
_____/

# ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING PLAINTIFFS TO SUBPOENA TRIAL WITNESS WITHIN FOURTEEN DAYS

This matter originated in Isabella County Circuit Court on May 2, 2007, when Plaintiffs John and Michelle Mercer filed a complaint against Option One Mortgage Corporation ("Option One"). The Mercers filed a first amended complaint just over one year later, on March 7, 2008, adding as defendants H&R Block, Inc. ("H&R Block"), Block Financial Corporation, Option One Owner Trust 2005-2007, Sage Credit Company ("Sage Credit"), and Diane Csiky. Another seven months later, on October 3, 2008, the Mercers filed a second amended complaint [Dkt. #15], adding as defendants Dan Hanley and Avrek Financial Corporation ("Avrek Financial").

The Mercers' claims arise from circumstances under which Option One approved and closed Michelle Mercer's loan application in March 2007, but refused to fund the loan after discovering that bank statements and an accountant's letter submitted in support of the loan application were altered. The fact that altered documents were involved in the transaction is not disputed, but at various times, the Mercers have maintained either that Option One altered the documents to avoid funding the loan, or that someone other than the Mercers altered the documents before passing them

along to Option One, in order to secure approval for the loan. Besides Option One, the Mercers have pointed to Sage Credit, Avrek Financial, Ms. Csiky, and Mr. Hanley, who were each involved in securing the loan for the Mercers. In their second amended complaint, the Mercers allege claims of breach of contract, fraudulent inducement or procurement, tortious interference with contracts or business expectancies in Colorado and Arizona, "fraud or negligence," and violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 ("RESPA"). The Mercers seek damages in excess of $1.5 million.

On November 19, 2009, the Court granted Option One and H&R Block's motion for summary judgment and dismissed the Mercers' claims against them. *See* [Dkt. # 59]. In particular, the Court adopted Magistrate Judge Charles E. Binder's recommendation that the Mercers' claims against H&R Block should be dismissed because the Mercers did not advance any evidence that would allow them to pierce the corporate veil in order to hold H&R Block liable for any conduct of its subsidiary, Option One. The Mercers objected to Judge Binder's conclusion, but the objection was overruled because the Mercers did not advance any material evidence.

The Mercers did not object to Judge Binder's recommendation that Option One was entitled to summary judgment on John Mercer's breach of contract claim and the Mercers' tortious interference and RESPA claims. Thus, these portions of the report and recommendation were adopted without further analysis.

Finally, Option One objected to Judge Binder's conclusion that it was not entitled to summary judgment on Michelle Mercer's breach of contract claim and the Mercers' fraudulent inducement claims. Judge Binder concluded that there was a genuine issue of material fact regarding whether any documents submitted in support of the loan application were altered and if

they were altered, who altered them. In its objections, Option One contended that it was uncontroverted that Option One received altered documents, that Option One only received altered documents before the closing, and that either the Mercers or the Mercers' broker altered the documents. The Court sustained Option One's objection, concluding that there was no genuine issue of material fact regarding whether Option One altered the documents, particularly when there was no evidence that Option One was sent, or received, unaltered versions of the pertinent documents prior to the closing on the loan. While it was clear that there was a dispute regarding who altered the documents in question, none of the evidence advanced suggested that it was Option One.

On December 14, 2009, the Court dismissed without prejudice for failure to serve the Mercers' claims against Block Financial, Option One Owner Trust, Sage Credit, Mr. Hanley, and Avrek Financial. On June 30, 2010, the Court granted Ms. Csiky's motion to set aside a Clerk's entry of default against her, particularly given that the default had only been entered as to the first amended complaint, but not the second amended complaint. *See* [Dkt. # 77, 82]. At this juncture, the Mercers only remaining claims are for "fraud or negligence" against Ms. Csiky.

Now before the Court is Ms. Csiky's motion for summary judgment [Dkt. # 75], filed on June 9, 2010. Ms. Csiky's primary argument is that Plaintiff cannot advance any admissible evidence to support her claims against Ms. Csiky. Plaintiff filed a response [Dkt. # 85] on July 22, 2010. Ms. Csiky did not file a reply. A hearing was scheduled on the motion for September 9, 2010, at 3:00 p.m. While counsel for Ms. Csiky appeared, neither counsel for the Mercers, nor the Mercers themselves appeared. A telephone call to the Mercers' counsel's office at 3:30 p.m. went unanswered. As further explained below, Ms. Csiky's motion will be denied because the Mercers may be able to produce the testimony of Mr. Hanley at trial, demonstrating that Ms. Csiky modified

Ms. Mercer's loan documents. However, particularly given the Mercers default at the hearing, the Mercers will be given fourteen days to demonstrate that they have served Mr. Hanley with a trial subpoena. Failure to do so will result in dismissal of the Mercers remaining claims against Ms. Csiky.

I

Ms. Csiky signed a declaration on May 20, 2009, which was filed by Option One on May 25, 2009. *See* [Dkt. # 48]. Ms. Csiky declared that she "was employed as a loan officer for Avrek Financial . . . from approximately August 2004 until early April 2007," when she was "laid off . . . along with many other employees." Csiky Decl. ¶¶ 1, 11, May 25, 2009. Ms. Csiky believed that she was "laid off as part of a general downsizing," and that "Avrek went out of business sometime in late April or early May 2007." *Id.* ¶ 11.

Ms. Csiky understood that "Avrek Financial was licensed to broker loans in some states and had some arrangement with Sage Credit Company that enabled the processing of loans of customers from other states where Sage Credit was licensed but Avrek was not licensed." *Id.* ¶ 4. As a loan officer, Ms. Csiky's role was "to gather credit, employment and income information from the customer and shop for a loan from various lenders," and to pass that information along to "our loan processor Julie Chautavipat for further processing and submission to the lender." *Id.* ¶ 3.

Ms. Csiky indicated that during her employment with Avrek Financial, she "worked with Michelle Mercer in relation to two loan applications she made to . . . Option One . . . in early 2006 and early 2007." *Id.* ¶ 2. Ms. Csiky explained that the 2006 loan was in Michelle Mercer's name only, "because of John Mercer's credit history." *Id.* ¶ 5. Thus, to process the 2006 loan, which was approved by Option One, Ms. Csiky "divid[ed] the income and assets of the Mercers, including the

assets reflected in bank statements." *Id.* ¶ 5. The Mercers contacted Ms. Csiky in 2007 to ask her "to shop for a new loan to pay off Michelle Mercer's 2006 loan and to obtain cash back." *Id.* ¶ 6. According to Ms. Csiky, "Option One was the only lender that indicated it would consider approving the loan to Michelle Mercer." *Id.*

With respect to the loan application process, Ms. Csiky stated that she "had difficulty dealing with John Mercer and in obtaining information from him," so she "refused to work with him," and worked with Michelle Mercer. *Id.* Ms. Csiky recalled receiving bank statements to support the 2007 loan application, but did not recall "whether the statements provided to us were joint statements of John and Michelle Mercer or statements containing Michelle Mercer's name only." *Id.* ¶ 7. Ms. Csiky also recalled having difficulty obtaining an updated letter from an accountant, so she "gave the CPA letter from the 2006 loan to Julie Chautavipat." *Id.* ¶ 8. Ms. Csiky asserts that Ms. Chautavipat later told Ms. Csiky that "she altered the CPA letter by changing the date on the letter." *Id.* Ms. Csiky declared that it was Ms. Chautavipat who "processed the bank statements along with the other loan application materials and submitted them to Option One." *Id.* Ms. Csiky specifically denied "alter[ing] any bank statements, CPA letters or any other documents in relation to the Michelle Mercer loans." *Id.*

In her motion for summary judgment, Ms. Csiky provides a few additional facts, to suggest that the Mercers were under significant financial strain. She explains that the Mercers' March 2006 loan was a refinance of a mortgage in the amount of $421,250 on real property located at 5332 S. Nottawa Road, Mt. Pleasant, Michigan. *See* Def. Br. Ex. 1. The Mercers used the proceeds from the loan to payoff $271,213.94 in delinquent income taxes to the IRS, $3,465 in delinquent property taxes, $58,812 in unsecured credit card debt, and received $7,057 in "cash." *Id.* The following

month, in April 2006, the Mercers refinanced another mortgage in the amount of $360,000 on real property located at 3964 N. 41, Manton, Michigan, with the assistance of a different mortgage broker, Smart Money Mortgage. *See* Def. Br. Ex. 2. The proceeds of the mortgage were used to payoff an additional $30,689 in unsecured credit card debt and the Mercers received $234,271 in "cash." *Id.*

The March 2007 loan that is the subject of this lawsuit was intended to refinance the mortgage on the Mt. Pleasant property that was the subject of the March 2006 loan. *See* Def. Br. Ex. 3. As of March 2007, Michelle Mercer's credit score was 593, *id.*, which Ms. Csiky asserts limited the Mercers' mortgage options. On March 9, 2007, Option One conditionally approved a loan to Ms. Mercer in the amount of $593,100, of which $120,717.94 was to be "cash" given to Ms. Mercer at closing. When Ms. Csiky "received the conditional preapproval from Option One, Ms. Csiky turned over Plaintiffs' loan" to Ms. Chautavipat. Option One indicated that the loan was "clear to close" on March 24, 2007.

Ms. Csiky suggests that the "real reason" that Option One refused to fund Ms. Mercer's loan was that "Option One was on the brink of financial collapse." Ms. Csiky provides a news article indicating that as early as April 2007, H&R Block had announced plans to sell Option One due to its financial condition. *See* Def. Br. Ex. 4. Ms. Csiky further suggests that the subprime mortgage crisis made it difficult for lenders like Option One to continue to sell high risk loans on the secondary market, and that Option One decided that they did not want to be "stuck with" Ms. Mercer's loan.

Ms. Csiky also suggests that Mr. Hanley used her as a "scapegoat" when he represented in an email to Sean McClinton of Option One that a Sage Credit employee had altered the Mercers'

documents and provided Mr. McClinton a copy of Ms. Csiky's final paycheck from Avrek. *See* Def. Br. Ex. 7 (email & paycheck). The email provided that "the loan officer took it upon herself to change the date of the letter," and "we have taken the disciplinary action of terminating the person responsible." *Id.* Ms. Csiky emphasizes that, according to Mr. McClinton's affidavit, it was a Sage employee who allegedly altered the Mercers' documents. *See* McClinton Aff. ¶ 21 ("Sage Credit informed Option One that . . . one of its employees wrongfully created the [CPA] letter . . . [and] informed Option One that the employee involved in the wrongdoing was being terminated from employment and Sage Credit even forwarded a copy of the terminated employee's last check."). Ms. Csiky contends that she was never an employee of Sage Credit, as her paycheck was issued by Avrek Financial, and suggests that Mr. Hanley's conduct was likely motivated by a desire "to placate Option One into not severing their relationship with his company so that he could continue to broker loans with them."

II

Ms. Csiky relies on Federal Rules of Civil Procedure 12(b)(6) and 56(c) to support her motion for "summary judgment." Nonetheless, the body of her motion does not actually apply the 12(b)(6) standard, and she does not appear to accept of the Mercers' factual allegations in the second amended complaint as true. Thus, Ms. Csiky's motion will be treated as a 56(c) motion.

A motion for summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the opposing party fails to raise genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment. *Anderson*, 477 U.S. at 250.

The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find [in its favor]." *Anderson*, 477 U.S. at 252.

III

The crux of Ms. Csiky's arguments in support of her motion for summary judgment is that "[w]ithout Mr. Hanley's direct testimony based on his personal knowledge of who he actually terminated, there is no evidence to support Plaintiffs' claims against Ms. Csiky." Ms. Csiky emphasizes that Ms. Mercer's loan application is signed by an "interviewer" named Melissa MacDowall, who is identified as an employee of Sage Credit, and does not provide a connection to Ms. Csiky. In addition, Ms. Csiky contends that Mr. McClinton's affidavit cannot be used to create

a genuine issue of material fact because it is not based on his "personal knowledge." *See* Fed. R. Civ. P. 56(e). While acknowledging that the nonmoving party need not "produce evidence in a form that would be admissible at trial," *Celotex*, 477 U.S. at 324, Ms. Csiky contends that such "hearsay" evidence cannot be considered on a motion for summary judgment, citing *Daily Press, Inc. v. United Press Int'l*, 412 F.2d 126, 133 (6th Cir. 1969).

Notably, the Mercers' response to Ms. Csiky's motion for summary judgment does not defend the McClinton affidavit or anticipated trial testimony as non-hearsay. His statement that "Sage Credit informed Option One that . . . one of its employees wrongfully created the [CPA] letter . . . [and] informed Option One that the employee involved in the wrongdoing was being terminated from employment and Sage Credit even forwarded a copy of the terminated employee's last check," would be "a statement, other than one made by the declarant . . . , offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). That is, it would be offered by the Mercers, to prove that an employee of Sage Credit "wrongfully created the CPA letter" and that "the employee involved in the wrongdoing was being terminated from employment." Thus, Mr. McClinton's affidavit, or anticipated trial testimony, is inadmissible hearsay.

Nonetheless, the Mercers argue that it is not necessary for Mr. Hanley to testify at trial for them to succeed on their claims against Ms. Csiky. They contend that it can reasonably be inferred from Mr. Hanley's email, and the attached final paycheck of Ms. Csiky, that Ms. Csiky's employment was terminated because she altered the Mercers' loan documents. The Mercers assert that the paycheck is admissible as a business record pursuant to Federal Rule of Evidence 803(6), and Ms. Csiky has not challenged its admissibility. The Mercers also contend that Mr. Hanley's email to Mr. McClinton is admissible pursuant to Federal Rule of Evidence 807, because it has

"equivalent circumstantial guarantees of trustworthiness." Rule 807 provides a "residual exception" to the exclusion of hearsay, as follows:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Fed. R. Evid. 807. Here, the Mercers suggest that Mr. Hanley's email is sufficiently trustworthy because, if it is intentionally false, it would subject Mr. Hanley to legal action under state law (e.g., for slander).

The Mercers' argument regarding the admissibility of Mr. Hanley's email is unpersuasive. However, at this juncture, that fact does not justify granting Ms. Csiky's motion for summary judgment when Mr. Hanley could testify at trial. His testimony, if consistent with his email and Ms. Csiky's final payment, would allow a reasonable jury to conclude that Ms. Csiky's employment was terminated because she altered the Mercers' loan documents, and to infer that Ms. Csiky did so alter the documents. Absent such testimony, however, Plaintiffs have not demonstrated that they can succeed on their claims against Ms. Csiky at trial.

Accordingly, it is **ORDERED** that Ms. Csiky's motion for summary judgment is **DENIED**.

It is further **ORDERED** that the Mercers are **DIRECTED** to demonstrate that they have served Mr. Hanley with a subpoena for the December 7, 2010 trial date, on or before **September 27, 2010**. Failure to do so will result in dismissal of the Mercers' claims against Ms. Csiky.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: September 13, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 13, 2010.

        s/Tracy A. Jacobs
        TRACY A. JACOBS